1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10       FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   PEDRO CRUZ,                          )   No. C 12-1617 LHK (PR)
                                          )
13              Petitioner,               )   ORDER DENYING PETITION FOR
                                          )   WRIT OF HABEAS CORPUS;
14       v.                               )   DENYING CERTIFICATE OF
                                          )   APPEALABILITY
15   WARDEN G.D. LEWIS,                    )
                                          )
16              Respondent.               )
     _____  )

17

18       Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.  He claims that his constitutional right to be free from ex post

20   facto laws was violated when prison officials applied to him a statute that had been amended as

21   of January 25, 2010, to decrease the time credits he would earn in prison.  Respondent was

22   ordered to show cause why the petition should not be granted.  Respondent has filed an answer.

23   Petitioner has filed a traverse.  Having reviewed the briefs and the underlying record, the court

24   concludes that petitioner is not entitled to relief, and DENIES the petition.

                               **BACKGROUND**

25

26   A.      Petitioner's Criminal and Prison History

         In December 2008, petitioner was validated as an associate of the Mexican Mafia prison

27   gang.  (Pet. at 6(2), Resp. ¶ 3.)  As a result, petitioner was given an indeterminate term in the

28

     Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
     G:\PRO-SE\LHK\HC.12\Cruz617denhc.wpd

1   Security Housing Unit ("SHU").  (*Id.*)

2          Under state regulations and rules of the California Department of Corrections &

3   Rehabilitation ("CDCR"), an inmate who has been validated and placed in the SHU may be

4   eligible to be reviewed for inactive gang status after six years of non-involvement in gang

5   activity.  *See* Cal. Code Regs. tit. 15, § 3378(e).  Once validated, an inmate can also drop out of

6   his prison gang at any time by completing a debriefing process.  *See* Cal. Code Regs. tit. 15, §

7   3378.1.  There is no evidence that petitioner has debriefed or been deemed inactive in the prison

8   gang.

9   B.        Section 2933.6

10         On January 25, 2010, California Penal Code section 2933.6 was amended as follows:

11  "Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric

12  Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for

13  misconduct described in subdivision (b) *or upon validation as a prison gang member or*

14  *associate* is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or

15  she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or

16  the Administrative Segregation Unit for that misconduct."  Cal. Penal Code § 2933.6 (emphasis

17  added).

18         Before section 2933.6 was amended, it was "possible for validated prison gang members

19  placed in [a SHU] to earn conduct credits totaling one-third of their sentences."  *In re Efstathiou*,

20  200 Cal. App. 4th 725, 728 (2011).  After the amendment, however, a validated gang member or

21  associate in a SHU could not earn conduct credits.  *See id.* at 732.

22  C.        Application of Section 2933.6

23         Before section 2933.6 was amended, petitioner earned credits while in the SHU as a

24  validated prison gang associate.  Specifically, petitioner was given one day's worth of credit for

25  two days served, and was given a parole date of December 6, 2020.  (Pet. at 6(2).)  But after

26  section 2933.6 was amended, he was ineligible to earn these credits, and his parole date was

27  recalculated and postponed until November 6, 2021.  (Pet. at 6(c).)

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\LHK\HC.12\Cruz617denhc.wpd                2

1
## STANDARD OF REVIEW

2    This court may entertain a petition for writ of habeas corpus "in behalf of a person in

3 custody pursuant to the judgment of a State court only on the ground that he is in custody in

4 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

5 petition may not be granted with respect to any claim that was adjudicated on the merits in state

6 court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

7 contrary to, or involved an unreasonable application of, clearly established Federal law, as

8 determined by the Supreme Court of the United States; or (2) resulted in a decision that was

9 based on an unreasonable determination of the facts in light of the evidence presented in the

10 State court proceeding."  28 U.S.C. § 2254(d).

11    "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

12 court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

13 law or if the state court decides a case differently than [the] Court has on a set of materially

14 indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the

15 'reasonable application clause,' a federal habeas court may grant the writ if the state court

16 identifies the correct governing legal principle from [the] Court's decisions but unreasonably

17 applies that principle to the facts of the prisoner's case."  *Id.* at 413.

18    "[A] federal habeas court may not issue the writ simply because the court concludes in its

19 independent judgment that the relevant state-court decision applied clearly established federal

20 law erroneously or incorrectly.  Rather, the application must also be unreasonable."  *Id.* at 411.

21 A federal habeas court making the "unreasonable application" inquiry should ask whether the

22 state court's application of clearly established federal law was "objectively unreasonable."  *Id.* at

23 409.

24    The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is

25 in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court

26 decision.  *Id.* at 412.  Clearly established federal law is defined as "the governing legal principle

27 or principles set forth by the Supreme Court."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

28 Circuit law may be "persuasive authority" for purposes of determining whether a state court

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\LHK\HC.12\Cruz617denhc.wpd            3

1  decision is an unreasonable application of Supreme Court precedent, however, only the Supreme

2  Court's holdings are binding on the state courts, and only those holdings need be "reasonably"

3  applied.  *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

**DISCUSSION**

5       Petitioner claims that applying amended section 2933.6 to deny him conduct credits

6  violates the Ex Post Facto Clause because the amendment increased the punishment for his

7  conviction by lengthening the duration of his sentence.  Respondent contends that amended

8  section 2933.6 does not increase the punishment for petitioner's conviction and instead penalizes

9  prison misconduct (i.e., active association in a prison gang) occurring after January 25, 2010.

10  Therefore, argues respondent, the application of the amended statute is not an impermissible ex

11  post facto law.  Respondent further contends that petitioner's claim is without merit because the

12  state courts' rejection of the claim was not contrary to, or involved an unreasonable application

13  of, clearly established Supreme Court precedent, as required by 28 U.S.C. § 2254(d).

14  A.      Clearly established Supreme Court law

15       The United States Constitution prohibits the states from passing any ex post facto law.

16  U.S. Const. art. I, § 10.  "To fall within the ex post facto prohibition, a law must be retrospective

17  – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the

18  offender affected by it,' . . . by altering the definition of criminal conduct or increasing the

19  punishment for the crime."  *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted).

20  Although the general rule appears straightforward, its application is more complex when

21  attempting to determine the date to be used for retrospective analysis and the punishment to

22  which the rule applies.

23       The Supreme Court rulings that shed some light on the court's approach to determining

24  retrospectivity and the punishment affected, can be summarized as follows:

> An amendment making mandatory a sentence that was the maximum permissible under old law was an impermissible ex post facto law when applied to a person who committed his crime before the amendment. ([*Lindsey v. Washington*, 301 U.S. 397 (1937).])  An amendment forbidding prisoners from earning good conduct credits for six months after reincarceration following a parole violation was an impermissible ex post facto law for a prisoner who violated parole after the amendment but had been sentenced under the old law. ([*Scafatti v.*

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\LHK\HC.12\Cruz617denhc.wpd                4

1    *Greenfield*, 390 U.S. 713 (1968) (summary affirmance).])  An amendment that
     reduced the amount of good time credits that could be earned was an
2    impermissible ex post facto law when applied to a prisoner whose crime was
     committed before the amendment was enacted.  ([*Weaver v. Graham*, 450 U.S. 24
3    (1981).])  An amendment that presented at most a speculative potential of a
     longer confinement (by increasing intervals between parole hearings for inmates
4    most unlikely to be paroled) did not violate the Ex Post Facto Clause.
     ([*California Dep't of Corrections v. Morales*, 514 U.S. 499 (1995).])  An
5    amendment taking away accumulated provisional credits was an impermissible ex
     post facto law because it lengthened a period of incarceration for [a] person
6    sentenced under the old law.  ([*Lynce v. Mathis*, 519 U.S. 433 (1997).]).

7    *Nevarez v. Lewis*, No. C 12-1912 SI (PR), 2012 WL 3646895, at *6 (N.D. Cal. Aug. 23, 2012).

8    B.      Analysis

9           The federal courts have taken different approaches to Ex Post Facto Clause claims

10   regarding time credits.  Some federal courts – like the California state courts –  have considered

11   the relevant date for retrospectivity purposes to be the date of an "in-prison event", and the

12   punishment to be the time credit deprivation.  This approach generally results in no ex post facto

13   violation being found.  *See, e.g.*, *Hunter v. Ayers*, 336 F.3d 1007, 1009-10 (9th Cir. 2003) (using

14   date of prison misconduct as relevant date for analysis of amendment to law regarding credit loss

15   and restoration); *Ellis v. Norris*, 232 F.3d 619, 620-21 (8th Cir. 2000) (state court's decision that

16   repeal of statute that had allowed prison officials discretion to award additional good time credits

17   did not violate Ex Post Facto Clause was not contrary to or an unreasonable application of

18   clearly established federal law – prisoner received all the accrued extra good time credits and

19   only lost the ability to be awarded additional good time credits); *Abed v. Armstrong*, 209 F.3d

20   63, 66 (2d Cir. 2000) (administrative directive adopted ten years after petitioner was sentenced

21   that disallowed good time credits for inmates classified as "security risk group safety threat

22   members"; "unlike *Lynce* and *Weaver*, the [d]irective was not applied retroactively" to petitioner

23   because no good time credit earned before the directive was forfeited and petitioner was not so

24   classified until after the directive was in effect).

25          Other federal courts have considered the relevant date to be the date of the criminal

26   offense, conviction or sentencing, and the punishment to be the original sentence for the crime.

27   This approach is more likely to result in a finding of an ex post facto violation.  *See, e.g.*, *Moor*

28   *v. Palmer*, 603 F.3d 658, 664 (9th Cir. 2010) (statute that was amended in 1997 to require a

1   psychological review as a precondition for parole for offenses such as petitioner's "was applied

2   retroactively" to petitioner who had been convicted in 1994 at a time when a psychological

3   review was not needed); *Ellis v. Norris*, 232 F.3d 619, 621 (8th Cir. 2000) (state "concedes that

4   the repeal of extra good-time credit applies retroactively, i.e., it applies to prisoners serving

5   sentences imposed prior to the repeal, as well as to those serving sentence imposed afterward").

6           This split in approaches among the federal courts tends to show the absence of clear

7   guidance from the Supreme Court on the ex post facto analysis of in-prison events. *Accord*

8   *Nevarez*, 2012 WL 3646895, at \*7.

9           California state courts have considered the relevant date for retroactivity purposes to be

10  the date of an in-prison event and the punishment to be the time-credit deprivation.  Generally,

11  California state courts have found no ex post facto violation.  The approach has been used since

12  the California Supreme Court decided *In re Ramirez*, 39 Cal. 3d 931 (1985).

13          In *Ramirez*, the California Supreme Court found a statutory amendment was not

14  retroactive, and therefore did not violate the ex post facto principle.  The statutory amendment at

15  issue increased the amount of sentence reduction credits that could be forfeited for prison

16  misbehavior.  39 Cal. 3d at 932-33.  The amendment was applied to an inmate who committed

17  his criminal offense, for which he was imprisoned, before the effective date of the amendment.

18  The California Supreme Court distinguished the United States Supreme Court's opinion in

19  *Weaver* as follows:

20          There is a critical difference between a diminution of the ordinary rewards for
            satisfactory performance of a prison sentence – the issue in *Weaver* – and an
21          increase in sanctions for future misbehavior in prison – which is at issue here.
            Here, [unlike in *Weaver*], petitioner's opportunity to earn good behavior and
22          participation credits is unchanged.  All that has changed are the sanctions for
            prison misconduct.  Unlike *Weaver*, petitioner's effective sentence is not altered
23          by the [statutory amendment] unless petitioner, by his own action, chooses to alter
            his sentence.
24
    *Id.* at 937.
25
            Similarly, in *In re Sampson*, 197 Cal. App. 4th 1234 (2011), the California Court of
26
    Appeal used this approach to reject the ex post facto challenge to section 2933.6 from an inmate
27
    who, like petitioner, had been sentenced and validated as a gang affiliate before section 2933.6
28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\LHK\HC.12\Cruz617denhc.wpd          6

1    was amended.  *Sampson* explained that the Ex Post Facto Clauses of the federal and California

2    constitutions were "analyzed identically."  197 Cal. App. 4th at 1241.  Assuming arguendo that

3    the credit-eliminating amendment to section 2933.6 constituted punishment, the state appellate

4    court was "not convinced that it punishes the criminal conduct for which petitioner was

5    imprisoned, or that it punishes misconduct that occurred prior to January 25, 2010."  *Id.*  "It is

6    punishment for gang-related conduct that continued after January 25, 2010."  *Id.* at 1242.  The

7    *Sampson* court found ongoing misconduct that could be punished based on its reasoning that

8    prison gangs present a serious threat to the safety and security of California prisons; a regulation

9    prohibits inmates from knowingly promoting, furthering or assisting any prison gang; the

10   validation of a prison gang member or associate is done with procedural protections; and the

11   validation represents a determination that the inmate warrants an indeterminate SHU term as a

12   severe threat to the safety of others or the security of the institution.  *See id.* at 1242-43.  The

13   validated "inmate continues to engage in the misconduct that brings him or her within the

14   amendment's ambit" unless and until prison officials release the validated inmate into the

15   general population, or the inmate becomes eligible for inactive review, or the inmate debriefs.

16   *See id.* at 1243.

17       In *In re Efstathiou*, 200 Cal. App. 4th 725 (2011), the California Court of Appeal rejected

18   another ex post facto challenge to section 2933.6 from an inmate who had been sentenced and

19   validated as a gang affiliate before section 2933.6 was amended.  The state appellate court

20   agreed with the reasoning of *Sampson* and, like *Ramirez*, distinguished the United States

21   Supreme Court's *Weaver* decision, noting that, in *Weaver*, the "inmate's credits were reduced

22   through no fault of his own."  *Efstathiou*, 200 Cal. App. 4th at 729.  The state appellate court

23   further distinguished *Weaver*, stating that the sanctions for possible future prison misconduct,

24   e.g., being prohibited from earning conduct credits by choosing to be an active member of a

25   prison gang, could not constitute a significant factor for either the trial judge when calculating

26   petitioner's sentence, or the petitioner when deciding to plead guilty.  *Id.* at 732.

27       In sum, the California state courts that have addressed the ex post facto claim at issue

28   have (1) used the date of the in-prison misconduct rather than the date of the criminal offense or

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\LHK\HC.12\Cruz617denhc.wpd          7

1   conviction to determine whether the amended section 2933.6 was retroactive, and (2) determined

2   that the amended section 2933.6 was not retroactive because it only punishes inmates for prison

3   misconduct (i.e., active membership in a prison gang) occurring after January 25, 2010.  Similar

4   reasoning has been used by federal courts to reject similar ex post facto challenges to the

5   amended section 2933.6 on federal habeas review.  *See Alfaro v. Lewis*, No. 12-1555 CRB, 2013

6   WL 3124592 (N.D. Cal. June 18, 2013); *Gregory v. Lewis*, No. C 12-0967 EMC (PR), 2012 WL

7   2343903 (N.D. Cal. June 20, 2012); *Saavedra v. Cate*, No. 1:12-CV-00796 GSA HC, 2012 WL

8   1978846 (E.D. Cal. June 1, 2012); *Mares v. Stainer*, No. 11-cv-1746-LJO-DLB (HC), 2012 WL

9   345923 (E.D. Cal. Feb. 1, 2012).

10          Given the lack of holdings (let alone clear holdings) from the United States Supreme

11   Court on the denial of conduct credits for ongoing misconduct, it simply cannot be said that the

12   California courts unreasonably applied clearly established United States Supreme Court

13   precedent in rejecting petitioner's ex post facto claim.  *See* 28 U.S.C. § 2254(d); *Nevarez*, 2012

14   WL 3646895, at *10.  Accordingly, petitioner's ex post facto claim must be DENIED.

15                                    **CONCLUSION**

16          The petition for writ of habeas corpus is DENIED.  The federal rules governing habeas

17   cases brought by state prisoners require a district court that denies a habeas petition to grant or

18   deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing §

19   2254 Cases, 28 U.S.C. foll. § 2254.  Petitioner has not shown "that jurists of reason would find it

20   debatable whether the petition states a valid claim of the denial of a constitutional right."  *Slack*

21   *v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

22          The Clerk is instructed to enter judgment in favor of respondent and close the file.

23          IT IS SO ORDERED.

24   DATED:  _____1/9/14_____          *Lucy H. Koh*
                                           _____
25                                          LUCY H. KOH
                                           United States District Judge

26

27

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\LHK\HC.12\Cruz617denhc.wpd          8